## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

HENRY F. HARRIS, JR. #13477          *
          Plaintiff,
     v.                              *   CIVIL ACTION NO. JKB-11-2672

OFFICER CHRISTOPHER BROCATO[1]      *
OFFICER PAUL O'CONNELL
BALTIMORE COUNTY POLICE              *
  DEPARTMENT
WOODLAWN BALTIMORE COUNTY            *
  POLICE DEPARTMENT
FOOD LION LLC                        *
MARY SMITH
          Defendants               *

**<u>MEMORANDUM</u>**

At approximately 7:45 a.m. on September 6, 2010, Henry F. Harris, Jr., a man in his mid-forties,[2] was in the throes of untreated mental illness.[3]  Harris apparently was approaching patrons in the parking lot of a Food Lion store in Randallstown, Maryland.  Someone—possibly a store employee—dialed 911 and indicated Harris was assaultive.  A Baltimore County police dispatcher sent uniformed officers Christopher Brocato and Paul O'Connell to the scene.  Each arrived in a marked Baltimore County police car.  ECF No. 9, Exhibit 1, ¶ 2.[4]

When Brocato arrived, Harris, who was lying on his back in the parking lot, jumped up and began pounding on the police car before opening the driver's door and attacking and

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of defendants' names.

[2] These details are gleaned from the transcript docketed as Exhibit 3 to ECF No. 9.

[3] By his own admission, Harris was diagnosed with bipolar disorder in 1988 and has experienced several psychotic episodes lasting three to four days.  ECF No. 12 at 1.

[4] Signed affidavits, identical to those appended as exhibits to ECF No. 9, were submitted on behalf of Brocato and O'Connell on December 8, 2011.  *See* ECF No. 11.

disarming Brocato.  Harris then attempted to shoot both Brocato[5] and O'Connell with Brocato's service weapon, which did not fire because just before Harris wrested it from him, Brocato ejected the magazine and fired a round into the air, clearing the chamber.  Seconds later, Harris pointed the gun at O'Connell who, unaware that the magazine had been ejected, shot Harris in the chest.  ECF No. 9, Exhibits 1-2 and Exhibit 3 at 17-18.

Harris was arrested and charged with attempted first degree murder, the use of a handgun in the commission of a crime of violence, and related charges.  While awaiting trial, he underwent psychological evaluation at Clifton T. Perkins Hospital and was deemed to be not criminally responsible for these crimes.  He later pleaded guilty to second-degree attempted murder and the handgun charge, but was found not criminally responsible and committed to the Department of Health and Mental Hygiene for treatment.  *Id.*, Exhibit 3 at 19, 23.

The case is now before the court on a motion to dismiss or for summary judgment filed by defendants Brocato, O'Connell, and the Baltimore County Police Department[6] (ECF No. 9), which shall be construed as a motion for summary judgment,[7] and correspondence deemed filed as Harris's opposition thereto (ECF No. 12).  A motion to dismiss also has been filed by defendants Food Lion LLC ("the store") and store employee Mary Smith (ECF No. 17), to which plaintiff has filed an opposition response (ECF No. 19) and defendants have replied (ECF

---

[5] Harris put the gun to Brocato's head and pulled the trigger several times.  ECF No. 9, Exhibit 3 at  17.

[6] The Woodlawn police station also was named a defendant to this suit.  It is one of the stations within the Baltimore County Police Department and county officials declined to accept service on its behalf.  For reasons apparent herein, it is not a proper party to this action.

[7] The pleadings will be treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure because materials outside the four corners of the pleadings have been considered.  *See Bosiger v. U.S. Airways*, 510 F.3d  442, 450 (4th Cir. 2007).

No. 20).  Upon review of the papers filed, the court finds a hearing unnecessary.[8]  *See* Local Rule

105.6 (D. Md. 2011).

**Standard for Dismissal for Failure to State a Claim**

  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to prove the grounds of his entitle[ment] to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do."  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration in original; citations and internal quotation marks omitted).  "[S]omething beyond the

mere possibility of loss causation must be alleged, lest a plaintiff with a 'largely groundless

claim' be allowed to 'take up the time of a number of other people...'"  *Id.* at 557-58 (quoting

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005)).  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In deciding a motion to dismiss pursuant to Rule

12(b)(6), a court must "accept the well-pled allegations of the complaint as true" and "construe

the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."

*Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  However, "because the court is

testing the legal sufficiency of the claims, the court is not bound by plaintiff's legal conclusions."

*Takacs v. Fiore*, 473 F. Supp. 2d 647, 651 (D. Md.  2007).

---

[8]  Harris requests appointment of counsel.  ECF No. 12 at 7.  A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1),[8] is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances.  *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982).  The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant.  *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984).  Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed.  *Id.*  Harris demonstrates the wherewithal to articulate the legal and factual basis of his claims and the  issues pending before the court are not unduly complicated.  Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent Harris under § 1915(e)(1).

**Standard for Summary Judgment**

Fed. R. Civ. P. 56(a) provides that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"  *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Reading the complaint in conjunction with other pleadings, the undersigned concludes that Harris named the Baltimore County Police Department on the basis that its officers are not sufficiently trained to defuse situations involving the acutely mentally ill.  ECF No. 12 at 2, 6.  He also suggests Brocato should not have drawn his service revolver when Harris "knocked" on his window, but instead should have responded by pulling a less-lethal weapon such as a Taser.  *Id.* at 4, 6.  Title 42, United States Code, section 1983 provides that "[e]very person who, under

color of any statute, ordinance, regulation, custom, or usage, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable." Municipalities are liable under section 1983 when "the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 694)). A plaintiff may establish the existence of a policy or custom in several ways: "1) through an express policy, such as a written ordinance or regulation; 2) through the decisions of a person with final policymaking authority; 3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or 4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

Harris neither identifies any policy or custom that allegedly caused his injury, nor provides a factual predicate to suggest such a policy or practice. He does not allege any decisions rendered by the Baltimore County Police Department, deficiencies in police training, or a widespread pattern or practice of improper use of force to support his § 1983 claim. A single incident alone will not establish a policy or custom and requisite causal connection to a § 1983 deprivation of rights. *See City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985). The court concludes that any allegations against the Police Department are insufficient for the claims to proceed and will dismiss the Police Department from this action.

Harris's claims against the store and its employee, Mary Smith, fare no better, as it appears that Harris failed to obtain service of process on these defendants. Even if service of

process had been proper, Harris's claims against these defendants are without merit.[9]   Harris claims that Smith lied when telling the police dispatcher that he was assaulting people in the parking lot, he had a gun, and a gunshot had been heard.  He bolsters his claim by noting that forensic evidence indicated the only guns at the scene were police-issued firearms (ECF No. 12 at 1, 5) and states that pretrial discovery in his criminal case revealed that "Mr. Jose," who had been cleaning the parking lot during the incident, told police Harris "never touched him" and that he "never heard gun shoots [sic]."   *Id.* at 1.   The police reports prepared by Brocato and O'Connell do not identify who placed the "hang up call" to the 911 dispatcher (ECF No. 9, Exhibit 1 at 6 and Exhibit 2 at 2).   It appears that when the officers arrived, an unidentified "Complainant" outside the store advised them that "an unknown black male wearing a blue shirt had been attacking people in the parking lot and was acting irate," and advised them "that the subject was lying down in the parking lot near the main entrance to the shopping center."[10] There is no mention of gunshots or that the "irate" individual (Harris) had a gun.  Nothing in the record supports Harris's claim that a Food Lion employee provoked or escalated the police response by claiming Harris had a firearm; indeed, it appears that by the time police arrived, the incident was winding down and Harris was lying on the ground.  The uncontroverted record evidence, combined with deficiencies in service of process, mandate dismissal of Food Lion LLC and Mary Smith.[11]   As no constitutional claim is presented, the court declines to accept supplemental jurisdiction over any state claim for defamation.

---

[9] As noted in defendants' reply, ECF No. 20 at 2, there is no showing that Smith, a store employee and  private citizen, "conspired" with police to deprive Harris of his constitutional rights; thus, there is no "state action," which is a prerequisite to suit under § 1983.

[10] The name of the Complainant is not apparent in the electronic court record.  *See* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=03K10005798&loc=55&detailLoc=K.

[11] The court notes that at the time he entered his guilty plea, Harris indicated he had no memory of any events occurring during the incident.  ECF No. 9, Exhibit 3 at  20.

Harris's claim of excessive force at the hands of Brocato and O'Connell also provides no basis for recovery.  Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989).  In assessing the "objective reasonableness" of the officers' conduct, the "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation."  *Id.* at 396.

This assessment requires balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  *Tennessee v. Garner*, 471 U.S. 1, 8 (1985).  Factors to be included in making this determination include the severity of the crime, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee.  *See Graham*, 490 U.S. at 396.  The determination is to be made "from the perspective of a reasonable officer on the scene."  *Id.*  "The Constitution simply does not require police to gamble with their lives in the face of a serious threat of harm."  *Elliot v. Leavitt*, 99 F.3d 640, 641 (4th Cir. 1996).  "The right to make an arrest carries with it the right to use the amount of force that a reasonable officer would think necessary to take the person being arrested into custody."  *Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988).

A police officer is justified in using deadly force if he had "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others."  *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001) (citation and internal quotation marks omitted)

(officer justified in shooting subject whose "walk man" radio officer mistook for gun); *Waterman v. Batton*, 393 F.3d 471 (2005) (officers justified in firing multiple shots at driver of vehicle who could potentially have run them over).   The evidence reveals that but for Officer Brocato's quick response in ejecting the clip and a live chambered bullet before Harris overpowered him, Brocato—and possibly Officer O'Connell—would have been shot. O'Connell—who did not know Brocato's gun was empty—fired two rounds at Harris after Harris aimed Brocato's weapon at him and pulled the trigger.   As noted in *Elliott*, 99 F.3d at 644:

> No citizen can fairly expect to draw a gun on police without risking tragic consequences. And no court can expect any human being to remain passive in the face of an active threat on his or her life. . . . [T]he Fourth Amendment does not require omniscience. Before employing deadly force, police must have sound reason to believe that the suspect poses a serious threat to their safety or the safety of others.   Officers need not be absolutely sure, however, of the nature of the threat or the suspect's intent to cause them harm—the Constitution does not require that certitude precede the act of self protection.

Defendants Brocato and O'Connell are entitled to summary judgment.   A separate Order follows.


May 23, 2012_____                      _____/s/_____
Date                                            James K. Bredar
                                                United States District Judge